IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TODD W. HUTTON and | § | |
| TAMMY D. HUTTON | § | |
| | § | Civil Action No. 3:09-CV-1413-O |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| SHAMROCK RIDGE HOMEOWNERS | § | |
| ASSOCIATION, et al. | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER OF REMAND

Before the Court are the Notice of Removal (Doc. #1), together with accompanying exhibits; Plaintiff's brief regarding whether homeowners' associations are state actors for purposes of 42 U.S.C. § 1983 (Doc. #13); Defendant's response thereto (Doc. #14); and Plaintiff's reply (Doc. #16).

Additionally, there is pending before the Court a Rule 12(e) Motion for More Definite Statement filed by Defendant Carla Milligan (Doc. # 4).

I.      Background

This case is before the Court after removal on federal question jurisdiction by several (albeit not all) Defendants. Plaintiffs originally filed suit in Texas state court[1] asserting a defamation case against Shamrock Ridge Homeowner's Association ("Shamrock Ridge HOA"), Patrick Briney, Jen Lopez, Jim Lambright, Rosewood Corporation and the SBB Management Company ("SBB Management"), and "John and Jane Does 1-20." Pl.'s Orig. Pet. 7 (Doc. # 1-3).

---

[1] This was Cause No. 7557586 in the District Court of Kaufman County. Doc. #1-3.

1

On July 20, 2009, Plaintiffs amended their pleadings to allege that Defendant Shamrock Homeowners Association is a state actor for purposes of Section 1983. Doc. # 1-4, at 21.

This amended petition also added Defendants Carla Milligan,[2] Jeffrey Johnston, and the Winners Circle Homeowners Association.  Based on the amended pleading, Defendants Shamrock Ridge HOA, Briney, Lopez, Lambright, and SBB Management filed a notice of removal in this Court. Doc. # 1-1. Subsequently, Defendant Milligan and Winners Circle Homeowners Association filed notices of consent to removal.[3] Docs. ## 3, 5.

As amended, Plaintiffs' pleadings allege claims for:  (1) relief under 42 U.S.C. § 1983 ("Section 1983") for violations of their rights under the First Amendment; (2) defamation; (3) intentional inflection of emotional distress; (4) business disparagement; and (5) conspiracy. Each of these claims is founded in state law, except for the Section 1983 claim. In that regard, Plaintiffs allege that Shamrock HOA is "a mandatory housing association and acting as [a] governmental unit." Pl.'s First Orig. Am. Pet. 2 (Doc. # 1-4 at 22).

Based on this Section 1983 claim, the Removal Defendants invoked federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state claims.

The Court ordered Plaintiffs to brief the issue of whether a homeowners association and its directors are state actors for purposes of Section 1983. Doc. # 11.  Plaintiffs submitted their brief on November 5, 2009 (Doc. # 12). Plaintiffs then filed an amended brief, Doc. # 13, on

---

[2] Although Defendant Milligan is Mayor of the City of Talty, she was sued in her individual capacity, the City of Talty is not a defendant in the suit, and Plaintiffs seek relief under Section 1983 solely against Shamrock Ridge Homeowners Association and individual defendants alleged to have acted in concert with it.  *Id.*

[3] Collectively, those who removed and those who have consented are referenced herein as the "Removal Defendants."

November 6, 2009. While there was no motion for leave to amend, this document consists of a

better quality PDF version and is accepted by the Court as the live version of Plaintiffs' brief.

Defendants' responded with case authority on November 12, 2009. Doc. #14. Plaintiffs replied

on November 17, 2009. Doc. #16.

## II.    <u>Legal Standards</u>

Federal district courts "have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This is a limited

jurisdiction and district courts may only adjudicate cases that fall within it. *Kokkonen v.*

*Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994); *Howery v. Allstate Ins. Co.,* 243 F.3d

912, 916 (5th Cir. 2001). District courts are required to police their own exercise of authority sua

sponte in order to avoid over-reaching or an abuse of power. *Shawnee Internat'l v. Hondo*

*Drilling Co.,* 742 F.2d 234, 236 (5th Cir. 1984).

Article III, section 2, of the Constitution limits federal court jurisdiction to actual "cases

and controversies." *United States v. Ferreiro,* 297 Fed. Appx. 331, 332 (5th Cir. 2008)*; Spencer*

*v. Kemna,* 523 U.S. 1, 7 (1998).  Pleadings "must contain a short and plain statement of the claim

showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, plaintiffs must

plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads

factual content that allows courts to draw the reasonable inference that the defendant is liable for

the misconduct alleged. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).

A court cannot look beyond the pleadings when considering whether the plaintiff has

stated a claim that presents a "case and controversy." *Spivey v. Robertson,* 197 F.3d 772, 774

(5th Cir. 1999). Pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).  Courts assume that well-pleaded allegations are true and then determines whether they establish a plausible claim to relief. *Id.* A court may not accept strained inferences, conclusory allegations, unwarranted deductions or legal conclusions. *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). Courts may not evaluate the plaintiffs likelihood of success; instead, they only determine whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 376 (5th Cir. 2004).

**III.    Analysis**

Section 1983 creates a cause of action for a plaintiff to enforce federal rights created by the United States Constitution or by other federal statutes. 42 U.S.C. § 1983; *see Albright v. Oliver,* 510 U.S. 266, 271 (1994). However, Section 1983 does not create or establish a right in and of itself. Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States Constitution or federal law. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 117 (1988). Therefore, the Plaintiff must demonstrate: (1) a violation of the United States Constitution or of federal law; and (2) that the violation was committed by someone acting under color of state law. *Id.*

This case was removed based solely on purported federal question jurisdiction based on Plaintiffs' Section 1983 claim. That claim manifestly fails if it is pressed against a party that is not a state actor. *See West v. Atkins,* 487 U.S. 42, 48 (1988). For this reason, the Court ordered briefing on whether the Defendant homeowner association is a "state actor" under applicable

4

law. *See Lugar v. Edmondson Oil Co., Inc,* 457 U.S. 922, 936 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982); *Bass v. Parkwood*, 180 F.3d 234, 241-43 (5th Cir. 1999). Throughout the history of Section 1983, courts have been strongly admonished to make a threshold inquiry whether the plaintiff complains of state action or "private conduct, 'however discriminatory or wrongful,' against which the Fourteenth Amendment offers no shield." *Lugar*, 457 U.S. at 936 (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349 (1974) [citing *Civil Rights Cases,* 109 U.S. 3 (1883)]); *Richard v. Hoechst Celanese Chem. Group, Inc.,* 355 F.3d 345, 352 (5th Cir. 2003), *cert. denied* 543 U.S. 917 (2004). The law thus requires a focused inquiry into whether "the alleged infringement of federal rights [can be] fairly attributable to the State". *Rendell-Baker,* 457 U.S. at 838. "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Richard*, 355 F.3d at 352 (*citing American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

As to homeowners' associations, Defendants offer several cases, including authority from within the Fifth Circuit, in which such an expansion was explicitly denied. *See Reule v. Sherwood Valley I Council of Co-Owners, Inc.,* No. H-05-3197, 2005 U.S. Dist. LEXIS 25597, *1 (S.D. Tex. Oct. 19, 2005); *see also Barr v. Camelot Forest Conservation Ass'n, Inc.,* 153 Fed. Appx. 860, 861 (3rd Cir. 2005); *Rehfuss v. Northpoint Homeowner's Ass'n,* 1993 U.S. App. LEXIS 14847 (9th Cir. 1993).

As noted by Defendants, the *Reule* decision was reviewed and affirmed by the Fifth Circuit in an unpublished opinion. *Reule v. Sherwood Valley I Council of Co-Owners, Inc.,* 235 Fed. Appx. 227 (5th Cir. 2007). The Court further notes that the Supreme Court denied certiorari. *Reule v. Sherwood Valley I Council of Co-Owners, Inc.,* 128 S. Ct. 1890 (U.S. 2008).

5

The parties do not offer and the Court has not found any other Fifth Circuit opinions on this issue. Critically, Plaintiffs in reply did not dispute Defendants' authority with any citations to the contrary. It appears the law is settled that homeowners' associations have *not* been found to be state actors.

The Court thus turns to whether the actions Plaintiffs' allege Shamrock HOA took, and any alleged active involvement of the State of Texas in Shamrock HOA affairs, appear distinguishable from the case law presented by Defendants.

Plaintiffs rely principally on three cases in reply to Defendants. *See Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n,* 531 U.S. 288 (2001)*; Shelley v. Kraemer,* 334 U.S. 1 (1948); *Marsh v. State of Alabama,* 326 U.S. 501 (1946). *Marsh* was a criminal case in which a company town's management, entwined with local law enforcement,[4] used a state penal statute to prevent a Jehovah's Witness from distributing religious material in town on grounds that it was a criminal trespass on private property. *Marsh,* 326 U.S. at 501-04. Specifically, the defendant had made use of the "business block," where residents posted mail, shopped, and conducted other commerce; defendant stood on the sidewalk and handed out literature. *Id.* at 503. The company had posted notices within the stores forbidding solicitation of any kind. *Id.*

*Marsh* dealt explicitly with the issue of whether a state may delegate the power to "impose criminal punishment" for distribution of "religious literature on the premises of a company-owned town contrary to the wishes of the town's management." *Id.* at 502. The Supreme Court began with the fact that the state itself could never have legally convicted the defendant for conducting the same activities on public property. *Id.* at 504. The Supreme Court

---

[4]The town's police force consisted of a county deputy sheriff, paid by the company for the extra work. *Marsh,* 326 U.S. at 502.

further distinguished this situation from one where a householder might prohibit further contact by the defendant on the householder's property, noting that "[t]he more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." *Id.* at 506 (citation omitted). The "business block" of the company town was not a residential area, but simply a common storefront area that happened to be private property opened up for public use. The distinction of private ownership, the Supreme Court found, was insufficient to support a criminal conviction. *Id.* at 507-08. The management of a private company town could not be more powerful than the state's public criminal justice system in enforcing trespass ordinances. *Id.*

In *Shelley,* African-American petitioners had purchased residential properties that were subject to racially-based restrictive covenants. *Shelley,* 334 U.S. at 4-8. Over their objections (and those of the sellers), the covenants were enforced through judicial action, divesting the petitioners of their property. *Id.* at 7-8. Nonetheless, the Supreme Court concluded that "the restrictive agreements standing alone cannot be regarded as a violation of any rights guaranteed to petitioners by the Fourteenth Amendment." *Id.* at 13. Provided the restrictive covenants met voluntary adherence, they did not violate civil rights. *Id.* Because this conduct would be "no action by the State," the Supreme Court found that the provisions of the 14th Amendment would not be violated. *Id.*

However, the restrictive covenants were overturned in *Shelley* because they were enforced judicially. *Id.* at 13-23. The Supreme Court reviewed a long history of judicial enforcement being deemed state action. *Id.* at 14-20. The Supreme Court did not hesitate to find "the full coercive power of the government" in action against the petitioners in *Shelley*, noting

several factors:

> The owners of the properties were willing sellers; and contracts of
> sale were accordingly accommodated. It is clear that but for the
> *active intervention of the state courts,* supported by the *full
> panoply of state power,* petitioners would have been free to occupy
> the properties in question without restraint.

*Id.* at 19 (emphasis added).

Significantly, *Shelley* did not hold that state action could be found in the state's contract

law under which had been drawn these racially discriminatory restrictive covenants on private

property. *Id.* The state action was found in the judicial enforcement that gave life to the

covenants' threatened discrimination. *Id.* at 20.

In *Brentwood Academy,* the Supreme Court dealt with whether a private organization

might be so pervasively entwined with the state that its actions could be fairly deemed state

action. *Brentwood Acad.,*531 U.S. at 298. The Supreme Court noted this was necessarily a "fact-

bound inquiry." *Id.* The organization was a state athletic association that arranged and managed

interscholastic sports for public schools. Finding "pervasive entwinement," *id.* at 298, the

Supreme  Court noted such factors as:

> 1. "The Association [was] not an organization of natural persons
>    acting on their own, but of schools, and of public schools to
>    the extent of 84% of the total."
> 2. Public school officials selected the  "members of the governing
>    legislative council and board of control from eligible
>    principals, assistant principals and superintendents" – i.e.,
>    other public officials
> 3. The Association was a necessary mechanism for coordinating
>    interscholastic games.
> 4. The meetings of the Association tended to be held during
>    official school hours to accommodate the governing
>    members, who were public school employees.
> 5. The Association was financed from dues paid by public schools
>    and a percentage of the gate of public school games.

> 6. Association employees were eligible for membership in the
> public employee retirement system.

*Id.* at 298-300.

Summarily, the Supreme Court concluded:

> ... to the extent of 84% of its membership, the Association is an
> organization of public schools represented by their officials acting
> in their official capacity to provide an integral element of
> secondary public schooling. There would be no recognizable
> Association, legal or tangible, without the public school officials,
> who do not merely control but overwhelmingly perform all but the
> purely ministerial acts by which the Association exists and
> functions in practical terms.

*Id.* at 299-300.

After a review of these cases, the Court turns to the pleadings here. With regard to

Shamrock HOA, Plaintiffs' pleadings read in the light most favorable to them would show that:[5]

> 1. Shamrock Ridge HOA "can foreclose on residents' homes for nonpayment of
>    dues." *Id.*, ¶ 4.5.
> 2. By increasing the number of votes, the Shamrock Defendants sought to dilute
>    the power of Plaintiff's vote as a Director of Shamrock Ridge's Board of
>    Directors. Pl.'s Orig. Compl. 3, ¶ 4.2. Pl.'s 1st Am. Compl. 5, ¶ 5.1.
> 3. The Shamrock Defendants developed a secret plan to rebuild an entrance way
>    to Phases 1-6 of the housing development, excluding Phase 7, in which
>    Plaintiffs live. Pl.'s Orig. Compl. 3-4, ¶ 4.3.
> 4. Certain Shamrock Defendants were bribed by the contractor to whom they gave
>    this task. *Id.* 4, n. 1.
> 5. The Shamrock Defendants breached fiduciary responsibilities to the residents
>    by representing this contractor to be a "landscape architect" when he was
>    not actually licensed as such. *Id.*; *see also* Pl.'s 1st Am. Compl. 5, n. 1
> 6. Plaintiff was rebuffed in arguing that all residents should have a vote on
>    whether the money used for the entrance way should be used in other
>    ways or spent at all. Plaintiff was rebuffed in arguing that all residents
>    should at least have a say in what the entrance way looked like. Pl.'s Orig.

---

[5] "Plaintiff" in this recitation refers to Todd Hutton, following the manner of his pleading, which often falls into use of the singular that contextually appears to refer to Todd Hutton rather than co-Plaintiff wife. Shamrock Ridge HOA and the Defendants sued based on their participation in its affairs are referred to collectively as the "Shamrock Defendants."

Compl. 4, ¶ 4.4.

7. Plaintiff began an email campaign notifying residents of the issue and gathered support to curtailing the plan or ending it, as well as possibly removing certain Shamrock directors. *Id.* 5, ¶ 4.6.

8. An unidentified number of ("many") residents were too intimidated by the power of the Shamrock Defendants to speak out against their plan. Pl.'s 1st Am. Compl. 7, ¶ 5.5.

9. Plaintiff was then subjected by Shamrock Defendants to a defamatory publicity campaign among residents and to obscene private communications. *Id.* 5, ¶¶ 4.7, 4.8; 6-7, ¶ 4.11, 4.12; *see also* Pl.'s Orig. Compl. 8, n. 5.

10. Plaintiff retained "protection" for purposes of physical security because one of his political opponents was known to be ill-tempered. *Id.* 5-6, ¶¶ 4.09, 4.10.

Plaintiffs do not relate these pleadings to the holdings of the cases upon which they rely to sufficiently demonstrate state action. The pleadings do not allege facts that would lead the Court to find a legally cognizable claim that the State of Texas is "pervasively entwined" in the management and operations with Shamrock HOA, *see Brentwood Acad.,* 531 U.S. at 298-300, used the criminal justice system to punish Plaintiffs for protected speech at the discretion of Shamrock HOA, *see Marsh*, 326 U.S. at 507-08, granted punitive judicial enforcement against them for exercise of their civil rights, *see Shelley*, 334 U.S. at 19, or had any other involvement with Shamrock HOA that would transform that private organization in a public actor with respect to the matters of which Plaintiffs complain.

Consequently, Plaintiffs have not pled a set of facts that, if deemed true, would establish state action by Shamrock HOA. Therefore, the Court finds that Plaintiffs' Section1983 action should be **DISMISSED** for failure to state a claim.

The Court now turns to the question of whether it should nonetheless retain supplemental jurisdiction over the pendent state claims.

**2. Supplemental Jurisdiction**

10

Courts may decline supplemental jurisdiction over remaining state law claims if no federal claims remain. See 28 USCS § 1367(c)(3) ("Section 1367"). However, when a district court loses subject matter jurisdiction, a remand is not necessarily automatic. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.,* 554 F.3d 595, 602 (5th Circ. 2009).  Fifth Circuit courts must move with prudent discretion in determining whether to retain the remaining state law claims. *Id.* A court abuses its discretion if it declines supplemental jurisdiction and remands a case "after investing a significant amount of judicial resources in the litigation." *Id.* Accordingly, a court must then consider the remaining factors under Section 1367(c) and the "common law issues of judicial economy, convenience, fairness and comity as applied to the case." *Id.* at 603.

The remaining factors of Section 1367(c) are relatively inconclusive in sum. The state law claims certainly predominate over the purported federal claim, which has been proven to be illusory. *See* 28 U.S.C. § 1367(c)(2). On the other hand, the state law claims do not raise particularly novel or complex issues of state law, *see* 28 U.S.C. § 1367(c)(1), and there are no other compelling reasons for declining jurisdiction apparent to the Court at this time. *See* 28 U.S.C. § 1367(c)(4).

However, turning to the common law considerations noted by *Brookshire*, the Court finds a stark contrast between the present litigation and those circumstances in which remand is an abuse of discretion. *See Brookshire,* 554 F.3d at 602-04. In *Brookshire*:

> The litigation in federal court lasted more than three years, generating more than 1,300 entries in the district court docket. The district court decided forty-one dispositive motions, fourteen *Daubert* motions, and seven other motions *in limine*. Discovery had closed and the parties were making final preparations for trial. Trial was originally set for October 17, 2005, but was continued four times. The most recent trial setting was February 11, 2008.

11

*Id.* at 598.  Other cases cited as examples had similar, extensive litigation in the federal court that considered remand. *See id.* at 602-03.

This litigation has been in this Court for less than five months, generating fifteen entries on the docket. The only motion generated was a Rule 12(e) motion, *see* Doc. #4, which is rendered moot by this decision. A trial date has not yet been set. The parties submitted a proposed set of dates for a scheduling order on November 13, 2009. *See* Doc. #15.

In contrast, the litigation had been pending for over a year in the state court before removal. *See* Doc. # 1-1, 2. The case had advanced to the point that summary judgment was under active consideration. *See* Doc. #1-1, 3. Judicial economy, convenience, fairness and comity argue in favor of returning this case to the forum in which the vast majority of litigation has occurred so that it may be resolved there, rather than to retain purely state law claims in this forum where all must begin again.

## IV.    Conclusion

The Court **ORDERS** that Plaintiff's Section 1983 claim be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

The Court **ORDERS** that this case be remanded to the state District Court of Kaufman County, Texas.

The Court **ORDERS** that Defendant Milligan's Rule 12(e) motion be **DISMISSED** as **MOOT**.

So **ORDERED** this **14th** day of **December, 2009.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

12